and Oxford Health Plans. Now we have counsel for the appellants and counsel for one of the appellees who's here present in court and I understand we would like to reserve three minutes for rebuttal. Is that right? That's correct, Your Honor. Mr. Stieglitz, whenever you're ready. Good morning, Your Honors. May it please the court. My name is Jonathan Stieglitz, representing Dr. Farsan Faizbash of Appellants' Emsurgcare and Emergency Surgical Assistance. This case presents a fundamental procedural paradox, a recourse dead zone, where my clients are legally barred from even having an opportunity to seek payment from the patient who received their services and are simultaneously barred from having an opportunity of seeking payment from that patient's insurer. The heart of this paradox stems solely from appellee Mr. Hager's personal choices. Unlike a typical emergency room encounter, Mr. Hager specifically refused treatment from other physicians and personally requested that Dr. Faizbash provide him with the emergency surgery. He subsequently signed a contract promising that he could be responsible for that bill if the insurer did not pay. However, when Oxford underpaid the claim, Mr. Hager refused to even assist. Mr. Hager. Mr. Stieglitz, I think we're familiar with the facts of the case. You don't really need to go through the procedural history of the underlying facts. Sure. Can I ask you, with respect to Oxford, I didn't really understand any argument in your blue brief to be pointing to anything that you consider to be an error in the district court's dismissal of that claim. Am I missing something? Did you did the blue brief say the district court made the following mistake in dismissing that? You're talking about the Southern District of New York. Yeah. So in our in our minds, I think there's the second circuit law. There are arguments that could have been made. I don't think they were strong ones. And to put forth a strong brief, I don't think we were going to be. We were not. So you're only attacking. Am I correct that you're only attacking the dismissal of the claim with respect to Mr. Hager? Because you seemed in your blue brief to want to be attacking them both. But I didn't see anywhere where you actually told us anything that you actually thought the district court got wrong in the Southern District of New York. Clarify that if you could. I don't think the Southern District of New York. I mean, as we put put it forth to this court, I don't think the Southern District of New York did anything wrong. I thought that I thought the Southern District of New York was put into a position with the case that it had in front of it following the central district's rulings that it was very limited in what it could do. Well, hang on a second. I mean, the district court could have, I don't know, decided whatever it wanted. Let me rephrase my question. Sure. Are you now before us asserting that there was error in the Southern District of New York's decision with respect to Oxford? I am not asserting that there is. Are you seeking to overturn it? I'm seeking to overturn the entire process. Well, that's what I'm asking. Okay, let's go there. You would like among your relief to be us reversing the Southern District of New York, correct? To the Southern District of New York. Among other things. Among other things. Okay. The Southern District of New York, the case could still proceed back to the Southern. If the Central District of New York, let me be clear, as it pertains to the ERISA claim, I think the Southern District of New York's analysis of the plan is clear. And I don't think there is a basis. I don't think that I would argue to this court right now that there is a basis for reversal about that. Okay, so let me pause there. So just to be clear, you were not challenging dismissal of the ERISA claim? I'm not because the plan says there's no standard. No, no, I know why, but I just want to be clear, you were not. Correct. Okay. Then I understand that what you were, you had one sentence in your opening brief that said, if we revive the contract claim against Hager, you would like the tortious interference claims against Oxford to be revived, right? Correct. Okay. That is helpful to understand the scope of what you are, what relief you were seeking from this court. That's correct, Your Honor. Okay. So if you would now maybe go back to where I think you were going before, which is why you think there was error in the Central District ruling with respect to Mr. Hager. Correct. Okay. So the Southern District of New York determined that because Mr. Hager personally requested my client's services, the terms of the health plan precluded my clients from having standing to sue the insurer. So by choosing the doctor and then choosing to remain on the sidelines, Mr. Hager effectively triggered the plan language that stripped my client of those ERISA claims. This brings us to the Central District's decision that relied on the California Supreme Court's decision in prospect. So the Central District dismissed my client's claims against Mr. Hager based on the assumption that there was judicial recourse, that we would have a claim against Oxford. The Central District relied on Apelli's arguments regarding this point. But as we indicated to the Central District, and now based on the Central District of New York's rulings, there is no recourse. So can I ask a question about this concept of recourse? Because it seems to me that there are two different concepts kicking around. One is, is there an insurer you can go to and have some ability and some payment? And then the second, which is I think how you're using it, is, is there a place to go if the payment from the insurer is less than you think is the reasonable customary amount? So prospect came from a case called Bell v. Blue Cross. Bell v. Blue Cross was the insurer basically decided, this is what we paid based on our plan, this is what you got, doctor, that's all you get. And in Bell, the California Court of Appeals said, no, that's not right. The doctor should be able to go to court and seek quantum merit payment for the reasonable value of their services. Prospect then piggybacked off of that and said, okay, now that you have a right to go seek payment from the insurance company, you don't need to bring the patient into this litigation. You can resolve your issues with the insurance company directly. But here, we don't have that opportunity. But you didn't plead quantum merit in the district court. You're not challenging the decision on appeal. And I don't know. I think this analysis on the quantum merit is a little different, isn't it? You're saying the quantum merit as to Oxford? Yeah. So there's other cases that we, I have tried to plead this quantum merit claim as to Oxford. It's been found to be preempted. And is it in the circuit? Not in the circuit, but I'm fairly confident that it would be found to be. You'd be applying Ninth Circuit and California law. And Oxford would argue that they're not subject to the Department of Managed Health Care. Would we be applying? I was trying to figure out this choice of logic. I understand for state law questions, we would be applying California law. Right. For federal questions, would we be applying Ninth Circuit law or would we be developing our own Second Circuit law? I think we'd still be applying California law because it would be, I'd be arguing based on the California state law. But the Ninth Circuit law as it relates to ERISA would be federal law, right? Or am I misunderstanding? That would be federal law. But California has ERISA preemption case law as well. I'm actually, I'm intimately familiar with it. I took a case to the California Court of Appeal regarding ERISA preemption as well. But the issue would be under the Knox-Keene Act. And the question would be, is Oxford even subject to the Department of Managed Health Care and the Knox-Keene Act? There's been numerous cases both in the California courts and in the Ninth Circuit, which I would put whatever value you want to put on that, which indicates that because they're not regulated by the Department of Managed Health Care, instead they are regulated, if at all, if at all, by the Department of Insurance, the Knox-Keene Act and the regulations that would allow for us to bring that quantum merit claim wouldn't exist. Okay. All right. That's helpful. There's literally a case, there was a case that related to UnitedHealthcare where I think the case was YDM Management versus UnitedHealthcare Insurance Company. It was a California court, California court case where they said UnitedHealthcare is regulated by the Department of Insurance. And so therefore, the quantum merit claim would not apply. Okay. That's helpful. Let me ask, since I've walked in here, one of the things I'm puzzled about, because I understand the sense of injustice. We provided these services and now we have nowhere to go. Doesn't the California statute pretty much contemplate that that can happen to emergency care providers? Doesn't it say that you have to provide the services without regard to whether they even have insurance or an ability to pay? Absolutely. But I don't think it's contemplated. I think the court, but the court is the one. So the statute creates the obligation to provide the services. And Prospect is the one that supposedly may have created this dead zone, supposedly. That's the argument. But Prospect didn't do that. If you read Bell v. Blue Cross, if you read County of Santa Clara, they're very clear. The doctors need to have that recourse. They wanted to make sure the doctors have the recourse. And because Bell v. Blue Cross gave them that recourse, they were like, okay, you have that recourse under Bell. You don't need to bring the patients into this dispute. But Prospect, that's why footnote five is so important, because footnote five is saying, but if you don't have that recourse, if you can't bring the case into court, if you immediately are told by the judges you have no standing, then this opinion won't apply. Well, right. And I think I'd like to pause there. One of the challenges I had with your brief is I didn't see any affirmative argument as to why, under California law, Mr. Hager is liable. I didn't see any affirmative analysis of California statutes. All I saw was the reference to the Prospect footnote, and I think you said something like the footnote means that California law mandates that if medical providers lack recourse against the health care plan, then Mr. Hager can be held liable. But the footnote doesn't say that. The footnote simply says we express no opinion. Now, we express no opinion generally doesn't mean, and therefore we do express an opinion secretly. Right. But you never made the affirmative argument. I think we did. And I am lost. I think we did. Hang on. I'm lost when I read your brief, because you don't go back to the California statutes and say, let me map out why Mr. Hager is liable. You don't go to other cases and say, this is why Mr. Hager is liable. You seem to be just saying, because we later lost in the Southern District, now he's got to be liable. But that makes no sense. He's either liable because California law makes him liable or not. And I didn't see what you cited except for the footnote that says we express no opinion. Yes, Your Honor. So help me out. What you said in your blue brief, and point me to pages in your blue brief where you made an affirmative argument for what is the source of liability for Mr. Hager, because I didn't see it. So actually Mr. Hager actually made this argument the court put forth in his brief. No, I want to see in your blue brief. I will. Help me out, because that's what we look for. We're not digging around to try to figure out what a good argument for you might be. So the cases that we cited to were Moran.  I'm going to get the page. Sorry, Your Honor. Because the Catch-22 argument is not an argument in favor of liability. It's just saying it's unfair that I can't sue one of these people, but you've got to tell us which one you've got to sue and why. It would be starting at page 16 of the reply brief. No, no, no. The blue brief. The reply brief. You can't raise new arguments in a reply brief. I'm looking at your opening brief. This is where you set forth why you win a case. Your reply brief you can use to respond to new arguments that your opponent has raised in the red brief. But you can't raise new arguments for the first time in a reply brief before us. Your Honor, the point is I wasn't citing to a statute for the right to be able to assert a contract. Contract law is contract law. I don't know that I—the right to be able to contract for goods and services always exists. I mean, I probably cited to Hollingshead in my original blue brief that you have a right to— and I also think I cited to Earhart v. William Lowe in my original blue brief as well. But, for example, you could have argued—I'll make this up. You could have said, look, forget about the footnote and prospect, right? The footnote and prospect says that they express no view—California Supreme Court expresses no view in circumstances like the one presented here. So prospect doesn't knock me out. But I understood that in the Central District of California there was this whole fight over whether Oxford was—what's the term? A health service plan or— Healthcare—yeah, healthcare service. Healthcare services plan. Okay, that might have been an argument why prospect doesn't apply and the California statutes don't apply. But you don't make that argument in the blue brief. Or if you do, tell me where. Let's do page 21 then. 21? Page 21. Medical providers must be allowed to attempt to obtain payment for their services from someone, and we cite to Earhart v. William Lowe. The one rendering performance and incurring expenses at the request of other should receive reasonable compensation therefore. So let me make sure I'm understanding this. Your underlying theory is a straight-up breach of contract. Signed an agreement to pay and he didn't. We know that California law precludes balance billing, notwithstanding that contract, at least in certain circumstances. And prospect, in your view, says, yeah, but this scenario may not be one of those circumstances. Sorry, I apologize. No, I— Just repeat the question. I lost my—I was still thinking about Judge Arditi's question. Sorry, I mean, I think this ties to Judge Arditi's question. I think what I'm hearing you say is that your underlying claim is for breach of contract. Yes. That you recognize that California law precludes balance billing pursuant to the contract, at least under certain circumstances. Correct. But that prospect suggests that this may fall into an exception where you can pursue your breach of contract claim by balance billing. I think that—I don't think California law says anything about balance billing. I think prospect—because I want to be clear. I don't think California law says anything imposing a—that you're not allowed to balance billing. I thought prospect said that. Prospect says it. But prospect— Well, that's still California law. Prospect doesn't quote to any particular—any particular citation. Is prospect binding law in California? Prospect is absolutely binding law in California. Okay. It's a California Supreme Court decision. But it's not referencing a statute. Got it. But it does say you can't do the balance billing except perhaps in this area. Correct. It looks at the whole framework of the Knox-Keene Act and says, based on this, we think that there shouldn't be balance billing in this particular circumstance. I'm saying we're not in that circumstance. Right. So what I'm trying to figure out is, to me, understanding the scope of that footnote and how big the potential exception is. They didn't say it was an exception. They didn't say it wasn't. They just said they didn't express anything. It turns on what recourse means. Correct. And the examples that they give for where you might not have recourse is not you get some payment from the insurer but you don't have a court to go to to get more. The examples that they give is the HMO is unable to pay or disputes coverage, meaning we're not liable for this coverage. And so I'm trying to figure out. I think what's also important about the footnote is the first line. People look at the last line of the examples, but I think the first line is the most important line. Our holding is limited to the precise situation before us. The precise situation before them is not our case. Well, it depends on what recourse means, because if recourse means you can put in a claim and you're going to get some money, you have recourse. You got paid. Right. I think recourse is referring to what happened in Bell v. Blue Cross. That's what they're talking about. They're saying we created the opportunity now for you to be able to sue the insurance company through Bell v. Blue Cross. That is your recourse. So they really did mean recourse. It means a right to sue, because if it didn't mean a right to sue, the insurance company paid the doctors in Bell v. Blue Cross. You got what you got paid in the plan, and you'd be limited to it. So if recourse only meant that you get what the insurance company pays you, then Bell wouldn't exist. Okay. I think we have your argument. You've reserved three minutes for rebuttal. Why don't we turn first to Mr. Zorkin, who is on Zoom. And, Mr. Zorkin, you've got five minutes. Yes, thank you. When you please the court, the California Supreme Court banned balanced billing for emergency services for all patients with valid health coverage. Right now, Californians know that if they go to an emergency room, they're not going to face a $100,000 bill, as was the case in this case. My colleague asked the court to destroy this vital consumer protection and really bring in a new era of medical billing, where patients with valid health insurance, like Mr. Hager, may be on the hook for $100,000, depending on whether the doctor wins or loses the lawsuit against the insurer. That is not supported by any law. That is not what the prospect held. But isn't the argument here that the doctor can't even get a foot in the door to bring a case against the insurer to litigate the question of what's customary and reasonable, and that that's why there's no recourse? The doctor not only got his foot in the door, the doctor lost on the merits. This particular health plan prohibited assignments from patients to the doctor to bring a lawsuit against the insurance company. Other health plans do not prohibit assignments. An anti-assignment clause is an affirmative defense that can be waived. In fact, the Southern District allowed the appellants an opportunity to amend their complaint to allege waiver of the anti-assignment clause. Not only was the foot in the door, the case was lost on the merits. Well, I guess when I say merits, I mean adjudicating whether the payment that was tendered was in fact reasonable and customary or whether they got shortchanged. And I'm not sure. I understand the notion it's not a jurisdictional obstacle. And so in that sense, it's in the merits to say that it's barred by the non-assignment provision. But it doesn't get the doctors any closer to a judicial determination as to whether they've been paid fairly. Well, it's like in any case, Your Honor. There may be affirmative defenses that stop the case in its tracks before you get to the actual determination of how much should have been paid. And this case is no different than any of those cases. If there was a statute of limitations argument here, the district court in the Southern District could have dismissed the case based on the fact that it was untimely brought, which it was. And then what? Then what happens? Does California emergency room patients not have to wait to see what the outcome of the case is and then years later be sued for hundreds of thousands of dollars? That result would be directly at odds with prospect, which unambiguously held that the patients cannot be brought into a dispute between the doctor and the insurance company. And ending balance billing protections simply because appellants were unsuccessful in litigation, that would contradict established California law and public policy. And we're talking about millions of Californians who would lose protections from balance billing. And not with any type of straightforward rule, but this amorphous situation where it depends entirely on the satisfaction of the provider, the medical provider, with the lawsuit. Suppose the appellants won a dollar in this case in the Southern District of New York. Is that proper recourse? Suppose it wasn't a motion to dismiss that was granted. Suppose it was a motion for summary judgment on evidence. Suppose it was a trial, or in the Derisa case, a bench trial. This is just much too vague for this court to change California's public policy as established by the California Supreme Court. And it's not an accident that the California Supreme Court used those two examples in footnote five. They wanted to make sure that if a bill goes to the insurance company and the insurance company says, hey, this patient's not covered. You know, the patient stopped paying their premiums two months ago, and so the coverage is canceled. In that case, balance billing does not, the ban doesn't apply. Or the insurance company says, you know, we'd love to pay, but we declared bankruptcy last week. Unable to pay, wrong, in the footnote five. In that case, it would make sense that the balance billing ban would not apply. And in the back.  Do you agree that NSERC care in this case wouldn't have been able to avail itself of the quantum merit method that is available, at least in some circumstances, under California law? I think that, I think there's definitely an affirmative defense of a risk of preemption to a quantum merit claim. However, I will say from experience, courts, federal courts, differ wildly on their interpretation of a risk of preemption. And some cases are preempted. You know, some courts hold that quantum merit claims are preempted. Some courts hold not. And California courts are, you know, I don't want to say hostile, but they generally do not favor a risk of preemption of, you know, general legal causes of action like quantum merit or breach of contract. So it's hard for me to predict what would happen. But that's exactly why prospects' balance billing ban must hold. Because we can't put the emergency room patients in these precarious situations where even, you know, I practice health care law for a living and I don't know what's going to happen in these individual cases. You know, we cited a case where these appellants actually prevailed against Oxford just last year in the Central District of California in the Risa case. You know, these appellants filed lawsuits. I think they filed, you know, 30, 40 lawsuits in the last few years. They win some, they lose some. That's just the nature of litigation. That is not a reason for this court to, you know, I don't know what the right word would be, overturn the Supreme Court's balance billing ban that's been in place since 2009. Okay, thank you very much, Mr. Zorkin. Why don't we hear now from Counsel for Oxford. We have Attorney Dolph. You have five minutes. And obviously you heard Counsel for the Appellant say that he is not challenging, my understanding, he's not challenging on appeal the dismissal of the Risa claim. But he is seeking reinstatement with respect to your client of the tortious interference claims. That's correct, Your Honor. So may it please the court. I'm, as you said, Ada Dolph on behalf of the Oxford appellees. I want to pick up on a couple of threads that were being discussed in the last part of the argument. So first, Judge Robinson, you mentioned talking about how Knox Keene contemplated these types of situations. And I think that's exactly right. In an effort to combat, you know, extremely rising health insurance costs, one purpose of the Knox Keene Act was to help to ensure the best possible health care for the public at the lowest possible cost by transferring the financial risk of health care from patients to providers. So in this situation here, we have the burden of this determining the appropriate payment transferred to the two most sophisticated parties in the arrangement. So Oxford's not a sophisticated party? No, no, no. I would say that Oxford is. I'm saying that you're taking the burden off of the participant, right? And transferring it to the two parties who are involved in their daily businesses assessing the costs of medical care and working to keep those costs reasonable. What we have here, I think, is the appellant's attempt to marry two statutes, Knox Keene and ERISA, together to get one result. And they simply are too different to do that. So as your Honor said, we're limited at this point, as far as I can tell from the appeal, to the tortious interference claims. Here, if you go back to the very beginning, regardless of what happened in the California Supreme Court in prospect, and I do believe that appellants misstate the footnotes there. I think the judge was limiting the opinion to the facts before it. And certainly the examples it gave were examples of zero recourse. Whereas here, we simply have a, I would say, difference of opinion in terms of the value of the services provided. In any event, that statute makes clear, regardless of Oxford or any other provider, that at a bare minimum, the participant can never be billed for the balance. And while I understand that appellants are suggesting there's some nuances to that, where there could be certain circumstances under which that is not the case, that is not the way that the prospect opinion is written. It's focused on the purpose and six different features of NARCS scheme, which are driving at reducing healthcare costs and making sure that there's no balance billing in an emergency care situation. Under ERISA, obviously, we have a, here, we have an ERISA-governed plan at issue. So, in terms of the initial contract, the California Supreme Court has been interpreted in the Central District of California in the Methodist Hospital of Southern California case. And there, that case held, prospect thus teaches that in cases where a patient receives emergency treatment and that patient's healthcare plan does not have a contract with the healthcare provider, payment for the treatment can only be obtained and must only be obtained from the plan itself. So, this is the California law, in effect, depriving appellants here of the ability to balance bill Mr. Hager. Therefore, this contract, and again, it has a number of features that are problematic in and of itself, in terms of whether it's a contract or simply a statement of expenses that would be billed for services provided earlier. But, in any event, that contract was found to be, by the Central District of California, basically null and void, illegal, an illegal contract. And there's nothing in the appellant's brief or in any law here that could resuscitate that contract. So, then we move to, well, what are the other options for the appellants? Now, I would submit that Knox Keene is not as concerned about making sure, in this instance, where there obviously is some discrepancy between a routine emergency procedure and the amount that was invoiced. But, certainly, under ERISA, the claims that are issued here, and appellants had an opportunity to bring those in front of the Southern District of New York, which looked at those and found that they were going to be preempted. Any way you look at a tortious interference claim seeking to obtain payment under this ERISA plan, you will end up with a claim that is squarely preempted by ERISA. And that was the finding below with the Central District of California when it took a look at the proposed amended complaint, which contained a state law breach of contract claim. And the court said, you know, state law claims like this that attempt to govern the administration of a plan or govern the central pieces of a plan are preempted. Same with the transfer order from the Central District of California in which it said, look, we don't have to opine on what duties or abilities appellants have to sue and recover from Oxford. What we do know is that under Knox Keene, there is no way that the contract that was entered into, provided it is a contract in the first instance, is legal under California law. And it said to interpret those questions vis-a-vis Oxford would require an analysis of the plan. So in that instance, I would say certainly here, there's no basis for overturning the California courts and the Central District of California's conclusions that these tortious interference claims are basically null and void illegal. Because the only interference pointed to is a letter by Oxford explaining to Mr. Hager the promises that have made under the ERISA govern plan contract. And therefore, that original contract is null and void. And in any case, when you go to the ERISA context here, we are talking about direct reference to an ERISA plan, central point with the ERISA govern plan. And therefore, any claims, any state-wide claims, including tortious interference, breach of contract, which was examined below, are preempted by ERISA. Thank you very much. Why don't we hear from counsel for the appellant, Mr. Stieglitz. You have reserved three minutes for rebuttal. So I think it's really important to just respond to some of the things that my colleague from Mr. Hager mentioned. The first is, and to start off, I want to emphasize again, as I was trying to state the facts in the beginning, we are in this situation because Mr. Hager specifically chose the doctor. That's what happened because in the plan it says if you actually choose the doctor, then the right to assign the claim evaporates. And so we're talking about a situation here. His choices, Mr. Hager's choices, led to the anti-assignment. And an anti-assignment is a jurisdictional question. I mean, I don't know what value the court places on the decision of Spindex, which I might be pronouncing it incorrectly. It's the Ninth Circuit case, which specifically equated Article III standing with the ability to have an assignment and to bring a claim. So in our minds, and from that case law, it would seem to me that the standing, the jurisdictional question is relating to the assignment. Also, I think it's really important to point out that if we did win a dollar against – somehow we did win a dollar against Oxford. He mentions if we won a dollar, we could go then pursue it from the – we'd still be able to go pursue it from the patient and undermine all of California law and all of that. No, if we won a dollar, then we'd be done. That would be the end. We couldn't go any further. Then according to prospect, according to Bell v. Blue Cross, we've had our chance in court. We've had our day in court. We've had our opportunity. And then there would be nothing left for us because then we got our chance. Here we got nothing. Here we were told by the central district, you can't pursue Mr. Hager. You have no rights against Mr. Hager because of prospect, which obviously we strongly disagree with. And then we were told by the southern district of New York, you don't have any rights against Oxford because you have – your assignment is invalid. We pled an amended complaint to try to, in every possible way, in every possible way to show to the court, say we'd like to have standing for something. And in every possible way, the court said, no, it's either preempted or it's – all those claims are preempted. You can't bring those claims against Oxford directly. So we're basically – the court doors have been closed to us effectively. We filed our complaint, but that was all we were able to do. This is not a statute of limitations – this is not a situation where the statute of limitations defense was asserted by the defendants and the court ruled based on that statute of limitations defense that our case was dismissed. If that had been true, that would be the end of the case as well. And that's where we stand. We just want an opportunity to seek the amount that we believe that we are owed for the medical services. And we think the California law was very clear on that. That's what Bell was literally trying to do, is saying we can't shut these doctors out. They provide us with emergency medical services. They have to have a chance to at least validate whatever they think is the amount that they should be paid for those services. So I thank the court. Thank you very much to both counsel, all counsel, including those remote, who will take the case under advisement. This court, having completed the business for which it has convened today, will now stand adjourned. Thank you all very much. Thank you, Your Honor. Court stands adjourned. Thank you.